IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Quant Frank Cout Scott SL, et al., | No. CV-24-00477-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| Unknown Party, | |
| Defendant. | |

Before the Court is Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order ("TRO"), Preliminary Injunction, and Alternative Service. (Doc. 2). Also before the Court is Plaintiff's Memorandum of Points and Authorities in Support of their application. (Doc. 3). The Court now rules as follows.

**I.   BACKGROUND**

Plaintiffs are the developers of a software called "QuantV" which is used in certain popular video games and is registered with the United States Copyright Office. (Doc. 3 at 6–7). Plaintiffs require users of Quant V to pay for a subscription to gain access to it. (*Id*. at 7). Plaintiffs allege that Defendant, operating under the website LauncherLeaks.com, is currently infringing on Plaintiffs' copyright by distributing copies of QuantV to the public for free. (*Id*. at 7-9). Plaintiffs allege that Defendant does this by offering a forum for users to upload pirated copies of QuantV free of charge, and by encouraging its users to proliferate the program. (*Id*. at 9). Plaintiffs further allege that Defendant uses an internet registrar in the District of Arizona known as "Namecheap, Inc." ("Namecheap") but

intentionally conceals their identity in doing so. (*Id* at 8). Finally, Plaintiffs claim that when they attempted to contact Defendant about taking down the copyrighted material, they were inundated with offensive and explicit messages which demanded that Plaintiffs make QuantV available for free. (*Id*. at 10).

Plaintiffs thus seeks this TRO to require the following: "(a) deactivate and prevent the transfer of the domain names <launcherleaks.com>; (b) deactivate and permanently delete any website(s) at that domain name; (c) delete all copies of the copyrighted work registered with the United States Copyright Office by QFCS, with a registration number TX0009042080 (the "Work" or the "QuantV software"), which have been uploaded to any third-party websites associated with the domain name <launcherleaks.com>; and (d) cease providing all services for the maintenance and support of the websites at the <launcherleaks.com> domain name." (Doc. 2 at 4). Plaintiffs also requests that service by email be deemed sufficient under Fed. R. Civ. P. 4, and that this matter be set for a preliminary injunction hearing. For the following reasons, the Court will grant these requests.

## II. LEGAL STANDARD

A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105–1106 (9th Cir. 2012); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Where a movant seeks a mandatory—rather than a prohibitory—injunction, the request for

---

[1] The Ninth Circuit observes a "sliding scale" approach, in that these elements "are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, by example, an injunction can issue where there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

injunctive relief is "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).[2]

Unlike a preliminary injunction, *see* Fed. R. Civ. P. 65(a), a TRO may be entered "without written or oral notice to the adverse party," Fed. R. Civ. P. 65(b). A TRO may issue, *ex parte*, only where: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). Further, the Court may issue a TRO only if the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court may waive the bond "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Barahona-Gomez v. Renno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

**III.    DISCUSSION**

    **A. The *Winter* Factors**

        **i.    Likelihood of Success on the Merits**

Plaintiff's claims are likely to succeed on the merits. Plaintiffs allege copyright infringement under 17 U.S.C. § 106 against Defendant for operating LiveLeaks.com.

To present a prima facie case for copyright infringement, a plaintiff must (1) show ownership of the allegedly infringed material, and (2) demonstrate that the alleged infringer violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.

---

[2] "A mandatory injunction orders a responsible party to take action," while "a prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation marks omitted). "The 'status quo' refers to the legally relevant relationship between the parties before the controversy arose." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060–61 (9th Cir. 2014).

3

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (citing 17 U.S.C. § 501(a)). "[W]hile the Copyright Act does not expressly impose liability on anyone other than direct copyright infringers, courts have long recognized that in certain circumstances, vicarious or contributory liability will be imposed." *In re Napster, Inc. Copyright Litigation*, 377 F. Supp. 2d 796, 801 (N.D. Cal. May 31, 2005) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261 (9th Cir. 1996)). Specifically, the doctrine of contributory infringement "imposes liability where one person 'knowingly contributes to the infringing conduct of another.'" *Id.* (quoting *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). "The elements of contributory infringement are: (1) direct infringement by a third party; (2) actual or constructive knowledge by the defendant that third parties were directly infringing; and (3) a material contribution by the defendant to the infringing activities." *Id.* (citing *A&M Records, Inc.*, 239 F.3d at 1013 n.2, 1019–22).

      Here, Plaintiffs allege that Defendant is intentionally "making unauthorized copies of the QuantV mod available on LauncherLeaks.com." (Doc. 3 at 21). Plaintiffs allege that LauncherLeaks is not merely a passive participant in this infringement, but that its staff members and moderators use the website to distribute copies of QuantV. (*Id.* at 22). For example, Plaintiffs alleges that the username "crucifyme," whose profile states that they are a LauncherLeaks site moderator and staff member, has posted a copy of QuantV along with retaliatory messages to Plaintiffs when they asked to take it down. (*Id.* at 9–10). This is sufficient to be considered both actual knowledge of and material contribution to the infringement by Defendant, thus meeting the second and third elements of contributory infringement. Material contribution is further demonstrated by Plaintiffs allegations that Defendant encourages third parties to infringe on their copyright by using the website. (*Id.* at 22). Furthermore, Plaintiffs allege that Defendant is profiting from the above-mentioned activities by offering subscriptions to LauncherLeaks for increased downloading speeds and by selling advertisement space. These allegations are sufficient to consider both the users of LauncherLeaks who download QuantV, and the managers of website itself, as

infringers of at least two of Plaintiffs' exclusive copyright holder rights, namely the rights of reproduction, under § 106(1), and distribution, under § 106(3). LauncherLeaks users who upload QuantV to the site for others to copy violate Plaintiffs' distribution rights. LauncherLeaks users who download files containing QuantV without permission violate Plaintiffs' reproduction rights. The managers of Launcherleaks.com directly contributes to both of these activities. For the purposes of a TRO, Plaintiffs have sufficiently alleged the elements of contributory copyright infringement.

### ii.  Irreparable Harm

A preliminary injunction may issue only upon a showing that "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22.

Here, Plaintiffs have also demonstrated that Defendant's reproduction, alteration, and distribution of QuantV has resulted in injury to their reputation and ability to financially gain from their work. (Doc. 3 at 24). Specifically, Plaintiffs allege that free access to QuantV prevents their ability to control the software, which will likely result in alteration and degradation of it, thus impacting its reputation in the marketplace. (Doc. 3 at 26). This satisfies the irreparable harm requirement. *See Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 757 (9th Cir. 2018) ("'Evidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm,' so long as there is concrete evidence in the record of those things." (quotation and citation omitted) (alterations in original)). Additionally, Plaintiffs allege that free access to QuantV results in fewer paid subscribers who would otherwise legitimately access it, and that this metric of financial loss cannot be measured because it is a counterfactual. The Court also finds this harm to be irreparable as it can not be quantifiably measured in retrospect.

### iii.  Balance of Hardships and Public Policy

Before issuing a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. "[A] defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to

desist from its infringing activities." *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (cleaned up); *see also Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017) (holding that there is a "long-settled principle that harm caused by illegal conduct does not merit significant equitable protection.").

In the present case, Plaintiff's allegations directly tie the website LauncherLeaks.com to copyright infringement by third parties. It is the stated purpose of LauncherLeaks.com to make copyrighted content available to the public for free. (Doc. 3 at 29). While it is possible that there are legitimate purposes for certain activities on the website, the Court finds this unlikely given LauncherLeaks stated goal. Defendant cannot complain of a hardship of losing the ability to conduct illegal activity. Furthermore, the Court does not find that there is a more narrowly tailored way to halt the irreparable harm to Plaintiffs than to temporarily restrain the website. Therefore, any harm caused by this TRO is heavily outweighed by the risk of irreparable harm Plaintiffs face if Defendant's infringement is not enjoined.

Finally, the public interest favors issuance of an injunction. "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Disney Enterprises, Inc.*, 869 F.3d at 978 (internal citations omitted). Continued open trampling of these copyright protections harms the public. That is what is allegedly occurring here on LauncherLeaks.com. Therefore, the Court finds that this TRO is firmly within the public's interest.

### B. *Ex Parte* TRO against Defendants

Plaintiffs request that the TRO issue against Defendants *without notice*, which creates an additional level of analysis for the Court. The Court finds that the applicable requirements are met. First, Plaintiffs have filed a verified complaint. (Doc. 1). Plaintiffs also filed the instant Motion that—as discussed above—clearly shows that there is immediate and irreparable harm. As to the second requirement, Plaintiffs submitted a Declaration in which they certified that they attempted to locate the identity of those who

own or maintain LauncherLeaks.com. (Doc. 5 at 5). The declarant stated that LauncherLeaks does not list identifying information in its public registration and uses a reverse proxy service to conceal the name and location of its webserver. (*Id.*). Plaintiffs have further alleged that "notice being given to LauncherLeaks is likely to result in, inter alia, the site being transferred and/or renamed so that the infringing activity at issue will continue." (Doc. 3 at 15). Thus, notice would frustrate the very purpose the requested relief. Finally, it cannot be said that Defendant is wholly without notice of its alleged illegal activity as Plaintiffs have previously attempted to contact Defendant directly regarding the infringement, which resulted in online retaliation. All told, the Court is satisfied that Plaintiffs have complied with Rule 65(b)'s requirements for an *ex parte* TRO against Defendants.

### C. Alternative Service

Federal Rule of Civil Procedure 4(f)(3) provides permits this Court to authorize service on an individual in a foreign country "by other means not prohibited by international agreement, as the court orders." "As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). "No other limitations are evident from the text." *Id*. "[A] plaintiff must demonstrate only 'that the facts and circumstances of the present case necessitate[ ] the district court's intervention,' in which case the district court can 'properly exercise[ ] its discretionary powers to craft alternate means of service'—so long as the alternative means 'comport with constitutional notions of due process' and are not prohibited by international agreement." *Fornix Holdings LLC v. Pepin*, No. CV-22- 01275-PHX-DWL, 2022 WL 4359086, at *2 (D. Ariz. Sept. 20, 2022) (quoting *Rio Properties, Inc.*, 284 F.3d at 1014) (alterations in original).

The Court finds that alternative service is thus "warranted in light of the facts and circumstances of this case." *Id*. Defendant has proven impossible to locate, with its only listed address remaining unverified and as a rental office space in Iceland. (Doc. 3 at 10).

Further, service by means of email comports with constitutional notions of due process as it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Plaintiffs were provided the email addresses 9cc294e16fed4c4ca8309ac0b5c5f9bb.protect@withheld-forprivacy.com and abuse@namecheap.com by NameCheap, the entity through which Defendant registered the domains at issue in this suit. (*Id*. at 13). NameCheap requires users to verify and consistently monitor the emails associated with their domains. (*Id*.) Thus, Plaintiffs have provided sufficient assurance that Defendant owns and is monitoring the email address associated with its registration through NameCheap.

Finally, the Court finds that service by email is not, in this case, prohibited by international agreement. Iceland is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which does not prohibit service by email. *See Weiss Ratings, LLC v. The Individuals, Business Entities & Unincorporated Ass'ns*, Case No. 22-cv-23242-BLOOM/Otazo-Reyes, 2022 WL 17324856, at *1 (S.D. Fla. Nov. 29, 2022) (granting leave to proceed by alternate service for defendant that appeared to be located in Iceland). Accordingly, service by e-mail does not violate an international agreement in this case.

### D.  Appropriate Bond

Federal Rule of Civil Procedure 65(c) provides that the Court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Ninth Circuit has held that district courts have the "discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (emphasis in original).

Plaintiffs have requested that the Court waive the requirement of posting a security as Defendant's "cannot claim harm for loss based on willful and ongoing infringement."

(Doc. 3 at 30). However, the Court also finds that it is possible that Defendant would lose revenue earned from potentially legitimate advertisement on LauncherLeaks.com if it were taken down. If Defendants are not liable for copyright infringement, then this loss would be unjustified. Therefore, the Court determines that a bond of $20,000 is appropriate. *See Paramount Pictures Corp. v. Primewire*, No. 2:21-CV-09317-MCS-SK, 2022 WL 423408 (C.D. Cal. Jan. 7, 2022) (finding a $20,000 bond appropriate for allegations of copyright infringement involving a website registered through NameCheap).

Accordingly,

**IT IS ORDERED:**

1. **TRO**: That Plaintiffs' Motion for Temporary Restraining Order (Doc. 2) is **granted**. Defendant, as well as its officers, agents, servants, employees, and attorneys shall, immediately upon notice of this Order shall:

    i. deactivate and prevent the transfer of the domain names <launcherleaks.com>;

    ii. deactivate and permanently delete any website(s) at that domain name;

    iii. delete all copies of the copyrighted work registered with the United States Copyright Office by QFCS, with a registration number TX0009042080 (the "Work" or the "QuantV software"), which have been uploaded to any third-party websites associated with the domain name <launcherleaks.com>; and

    iv. cease providing all services for the maintenance and support of the websites at the <launcherleaks.com> domain name

2. **Preliminary Injunction**: To the extent that Plaintiff's Motion requests an order to show cause as to why a preliminary injunction on the same terms shall not issue, the Court will treat this request as a request for a preliminary injunction hearing.

3. **Service**: That, no later than **March 8, 2024**, Plaintiffs must serve Defendants with a copy of the following and file proof of such notice with the Court: (1) the Verified

Complaint (Doc. 1); (2) the Motion for TRO, supporting memorandum, and attachments (Docs. 2 and 3); and (3) this Order. Plaintiffs are permitted to serve Defendant in accordance with the terms of this Order. Specifically, Plaintiffs may serve a copy of this notice via electronic mail.

4. **Hearing**: That a Preliminary Injunction Hearing is set for **March 20, 2024 at 9:30 a.m.**, before the Honorable Judge Steven P. Logan, United States District Judge, in the Sandra Day O'Connor United States Courthouse, located at 401 West Washington Street, Phoenix, Arizona 85003, 5th Floor, Courtroom 501.

5. **Briefing**: That Defendant shall have until the close of business on **March 12, 2023** to file any Response to Plaintiffs' Motion; Plaintiffs shall have until the close of business on **March 15, 2024** to file any Reply in support of their Motion.

6. **Proposed Injunction**: That Plaintiffs shall submit a proposed form of preliminary injunction no later than **March 15, 2024**.

7. **Joint Notice**: That the parties shall file a Joint Notice by **March 12, 2024**, indicating whether the motion may be decided on the briefing and argument of counsel alone.

8. **Evidence**: That the parties shall attach any evidence supporting the arguments for the Court's consideration (including any exhibits and affidavits) to the briefing.

9. **Warning**: If Defendants do not respond to the Motion for a TRO/Preliminary Injunction or fail to appear at the above-scheduled hearing, the Court will deem such failure as consent to granting the motion, *see* LRCiv 7.2(i).

///
///
///
///
///
///
///
///

10. **Bond**: By no later than **March 12, 2024**, Plaintiffs shall post a cash bond in the form of a cash deposit of $20,000 with the Court in accordance with LRCiv 67.1. This bond is subject to modification if evidence shows that it will be inadequate to pay the costs and damages sustained by any party found to have been wrongfully enjoined.

Dated this 7th day of March, 2024.

                                                Honorable Steven P. Logan
                                                United States District Judge