**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Quant Frank Cout Scott SL, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>Unknown Party,<br><br>　　　　　　　Defendant. | No. CV-24-00477-PHX-SPL<br><br>**ORDER**<br><br>(***EX PARTE* AND UNDER SEAL**) |

Before the Court is Plaintiffs' Notice of *Ex Parte* Motion for Modification of the Preliminary Injunction (Doc. 40). For the following reasons, the Motion will be granted in part and denied in part.

**I.     BACKGROUND**

This case arises out of the alleged infringement of Plaintiffs' copyrighted software, the "QuantV software," by an unknown Defendant using the website domain name "launcherleaks.com." (Doc. 40 at 5). QuantV is a software used with certain popular video games and is registered with the United States Copyright Office. (Doc. 3 at 6–7). Plaintiffs require a paid subscription for users to obtain access to the software, but the unknown Defendant (or Defendants) behind the LauncherLeaks website have been distributing unauthorized copies of QuantV for free. (*Id.* at 7–9).

On March 6, 2024, Plaintiff filed an *Ex Parte* Emergency Motion for Temporary Restraining Order ("TRO") and request for Preliminary Injunction ("PI") (Doc. 2) seeking to enjoin LauncherLeaks from further infringement. The TRO was granted on March 7, 2024 (Doc. 14) and subsequently converted into a PI after the non-responsive Defendant

was deemed to have waived any argument opposing the Motion (Doc. 22 at 1). In granting the TRO, the terms of which were later converted into the PI, the Court found that Plaintiffs had sufficiently alleged that "both the users of LauncherLeaks who download QuantV, and the managers of website itself, [are] infringers of at least two of Plaintiffs' exclusive copyright holder rights, namely the rights of reproduction, under [17 U.S.C. ] § 106(1), and distribution, under § 106(3)." (Doc. 14 at 4–5). The Court therefore ordered Defendant to (1) "deactivate and prevent the transfer of the domain names <launcherleaks.com>;" (2) "deactivate and permanently delete any website(s) at that domain name;" (3) delete all copies of the copyrighted QuantV software "which have been uploaded to any third-party websites associated with the domain name <launcherleaks.com>;" and (4) "cease providing all services for the maintenance and support of the websites at the <launcherleaks.com> domain name." (*Id.* at 9). At the time the PI Order (Doc. 22) was issued, the Court noted that "it appears that Defendant does in fact have notice of this action as the alleged infringing domain name has changed from 'LauncherLeaks.com' to 'LauncherLeaks.net' in response to "being involved in [a] legal proceeding. . ." (Doc. 22 at 1 (quoting Doc. 20-1 at 2)).

Following entry of the PI Order, Plaintiffs moved for expedited discovery to identify the unknown parties operating the LauncherLeaks website, and in September 2024, Plaintiffs amended their complaint to name Anthony Wicklace as Defendant. (Doc. 40 at 7). On October 10, 2024, Defendant contacted Plaintiffs' counsel by email, "in which he confirmed that he had notice of this lawsuit and was attempting to view court filings in this case through the PACER." (Doc. 40-1 at 5; Doc. 35-1 at 4). About two weeks later, however, Plaintiffs became aware that their "copyrighted QuantV software is once again available for download on launcherleaks.net, without authorization." (*Id.* at 3). Plaintiffs argue that their "copyrighted Work is extremely popular, making it attractive to infringers like Defendant," and they therefore move this Court to "allow Plaintiffs to proceed *ex parte* to modify the PI and schedule a further hearing," as well as to impose an asset restraint on Defendant. (Doc. 40 at 8).

## II. LEGAL STANDARD

Courts have broad discretion under the Copyright Act to grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. A "district court has the power to supervise compliance with an injunction and to 'modify a preliminary injunction in consideration of new facts.'" *State v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017) (quoting *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002)). This includes the power to find a party in civil contempt for willfully violating the Court's orders. *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1393 (9th Cir. 1991).

## III. ANALYSIS

In their omnibus Motion, Plaintiffs make various requests of the Court: (1) they ask that the Motion (Doc. 40) be granted on an *ex parte* basis (Doc. 40 at 8–10); (2) they ask for modification of the PI to include a temporary restraint of Defendant's assets (*Id.* at 10–13); (3) they request release of the $20,000 bond Plaintiffs had to post as part of this Court's TRO (*Id.* at 13–14); and (4) they request a further hearing to determine potential civil contempt sanctions against Defendant (*Id.* at 14–15).

### A. *Ex Parte* Motion

At the time this Court issued its *ex parte* TRO in favor of Plaintiffs, it found that they had complied with Rule 65(b)'s requirements to warrant that the TRO be issued without notice to Defendant. (Doc. 14 at 6). Plaintiffs had filed a verified complaint showing immediate irreparable harm, certified that they attempted to locate the identity of the owner of the LauncherLeaks website, and further alleged that notice to LauncherLeaks would likely result in the site being transferred to facilitate continued infringement, which would frustrate the purpose of their requested relief. (*Id.* at 6–7).

Similarly, now, Plaintiffs have presented the Court with reasons to believe that "notice only serves to motivate Defendant further to hide his activities and/or continue disobeying this Court." (Doc. 40 at 9). This Court previously noted that Defendant likely had notice of this lawsuit based on the message posted to his website (Doc. 22 at 1); now,

it is clear that Defendant is on notice of this lawsuit given that he contacted Plaintiffs' counsel directly by email in October (Doc. 40-1 at 4). Based on these facts, it is probable that if the Court were to require the Defendant receive notice before modifying the preliminary injunction, the Defendant would simply transfer the LauncherLeaks website to another domain name and/or transfer his assets to avoid compliance with this Order. The Court therefore finds it warranted for Plaintiffs to proceed *ex parte* in this instance.

### B.     Asset Restraint

Plaintiffs' primary proposed modification of the PI is to seek a temporary restraint on Defendant's assets. (Doc. 40 at 10–11). They argue that "the proposed asset restraint falls squarely within this Court's inherent authority to issue a prejudgment asset restraint in a case such as this one in which a party seeks relief in equity." (*Id.* at 11). Furthermore, they argue that there is high need to impose an asset restraint because "Defendant has gone to great lengths to conceal his identity, location, and proceeds from Plaintiffs' and this Court's detection" and because "the accounts Defendant maintains with at least CashApp and Stripe represent not simply the proceeds of Defendant's copyright infringement but the instrumentalities that further and/or support the ongoing infringement." (*Id.* at 11–12). In their First Amended Complaint, Plaintiffs note that "Defendant profits from his unauthorized use of [the QuantV software]" because his unauthorized use "provides him with a means of selling subscription packages that enable users to download certain amounts of copyrighted content, including the [software], and further provides Defendant with a means of attracting visitors to the LauncherLeaks site and selling ad space on LauncherLeaks on that basis." (Doc. 28 at 11). Defendant specifically uses the services of Stripe and CashApp to process LauncherLeaks subscription payments, and to Plaintiffs' knowledge, Wicklace is the only person who owns and controls both accounts. (*Id.* at 14–15).

"The Ninth Circuit permits asset freezes when the movant shows 'a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted.'" *cPanel, LLC v. Asli*, 719 F. Supp. 3d 1133, 1157 (D. Or. 2024) (quoting

*Johnson v. Couturier*, 572 F.3d 1067, 1064 (9th Cir. 2009)). Other courts in this Circuit have imposed *ex parte* asset restraints in TRO/PI cases in accordance with a court's "inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief." *Amazon Content Servs. LLC v. Kiss Libr.*, 2020 WL 12863507, at *1, *3 (W.D. Wash. Aug. 27, 2020) (granting *ex parte* asset restraint and preliminary injunction where defendants engaged in widespread copyright infringement of plaintiffs' works through "a ring of substantively identical mirror websites"); *cPanel, LLC*, 719 F. Supp. 3d at 1156 (freezing defendants' assets related to infringing website domains). Such asset freezes are appropriate where infringing defendants have (1) distributed copyrighted material for profit, (2) have gone to great length to conceal their identities, and (3) are highly likely to "destroy, hide, move, and/or make unavailable the proceeds of their infringement if alerted to [the plaintiffs'] action." *Trial Film LLC v. Wu Daoai*, 2021 WL 2949508, at *4 (D. Ariz. July 14, 2021); *Kiss Library*, 2020 WL 12863507, at *2.

Here, Plaintiffs have presented evidence establishing each of these three *Kiss Library* elements. (Doc. 40 at 9–13). Accordingly, the PI will be modified to restrain Defendant's assets related to any infringing website domains. *See cPanel, LLC*, 719 F. Supp. 3d at 1157 (limiting the requested asset restraint only to those assets related to the defendants' infringing domains).

Additionally, Plaintiffs request a clarification of the PI to specifically list the domain name <launcherleaks.net>, which appears to be the successor website to the now-defunct <launcherleaks.com>, as a third-party "associated" website which must be deactivated pursuant to the terms of the original PI. (Doc. 14 at 9; Doc. 22). Adding this modification to the PI is justified by the additional factual discovery conducted in this case since the original PI was issued, since Plaintiffs have specifically identified <launcherleaks.net> as the new source of the continued infringement of their QuantV software. (Doc. 40 at 8).

### C. Release of Plaintiffs' Bond

Plaintiffs also request release of the $20,000 bond they were required to post as part of this Court's TRO. (*Id.* at 13). Federal Rule of Civil Procedure 65(c) provides that the

Court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Thus, to collect damages on a TRO bond, a party must prove both that the TRO was wrongfully issued and that the party seeking recovery under the bond suffered damages resulting from the wrongful issue of the TRO. It follows that, as long as there remains a possibility that both elements may still be proved, a party giving such a bond is not automatically entitled to release of the bond." *LaSalle Cap. Grp., Inc. v. Alexander Doll Co.*, 1995 WL 584429, at *3 (N.D. Ill. Oct. 2, 1995).

As this Court explained in its original TRO, "it is possible that Defendant would lose revenue earned from potentially legitimate advertisement on LauncherLeaks.com if it were taken down. If Defendants are not liable for copyright infringement, then this loss would be unjustified." (Doc. 14 at 9). Plaintiffs now seek release of the $20,000 bond based on their conclusory assertion that "this Court's injunction was far from wrongful." (Doc. 40 at 13). If true, Plaintiffs can rest assured that their bond will inevitably be released. At this juncture, however, this Court has not had the opportunity to decide this case on the merits. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."). Defendant could still appear in the case, as a default judgment has not yet been entered—and in fact, Plaintiffs have received some indication that Defendant may yet seek to avoid default. (Doc. 35-1 at 4).

Ultimately, the Court finds Plaintiffs' request to release the TRO bond premature. Plaintiffs have not provided the Court with any compelling or substantive reason to release the bond besides their contention that the preliminary injunction is not wrongful. While that may well be the case, there remains a slim possibility that Defendant could appear in this case and prove both that the TRO was wrongfully issued and that he suffered damages

as a result. Therefore, the Court will not release Plaintiffs' $20,000 TRO bond at this time and will dismiss this portion of the Motion without prejudice, as it may be more appropriately raised alongside a motion for entry of default judgment.

### D.     Contempt Hearing

"Civil contempt occurs when a party disobeys a specific and definite court order by failing to take all reasonable steps within the party's power to comply." *BBU, Inc. v. Sara Lee Corp.*, 2009 WL 10672191, at *1 (S.D. Cal. Sept. 29, 2009), *aff'd*, 361 F. App'x 775 (9th Cir. 2010) (citing *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006)). "A court may wield its civil contempt powers for two separate and independent purposes: (1) 'to coerce the defendant into compliance with the court's order'; and (2) 'to compensate the complainant for losses sustained.'" *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). "The party moving for a civil contempt order must establish the contemnor's violation by clear and convincing evidence. An alleged contemnor may defend against a finding of contempt by demonstrating either substantial compliance with the definite court order or a present inability to comply with the same." *ReBath LLC v. HD Sols. LLC*, 2019 WL 5420428, at *2 (D. Ariz. Oct. 23, 2019) (citations omitted).

Plaintiffs request that, "in light of the ongoing conduct of Defendant to infringe Plaintiffs' valid and enforceable copyright," this Court set a hearing to determine "whether or not Defendant is in civil contempt." (Doc. 40 at 14). They argue that Plaintiffs are entitled to a civil contempt hearing because "it cannot be said that Defendant has substantially complied when Defendant has allowed and is allowing Plaintiffs' [software] to be available at launcherleaks.net" (*Id.* at 14). Despite the Court's Order that Defendant "delete all copies of the copyrighted work registered with the United States Copyright Office by QFCS, with a registration number TX0009042080 (the "Work" or the "QuantV software"), which have been uploaded to any third-party websites associated with the domain name <launcherleaks.com>", as of October 24, 2024, Plaintiffs became aware that their QuantV software was once again available for download, this time on

launcherleaks.net. (Doc. 14 at 9; Doc. 40-1 at 3–4). Presumably, this download was made available at the behest of, or with the approval of, Defendant Wicklace—but that presumption is not an established fact.

Defendant still has not appeared in this matter, and Plaintiffs' Application for Entry of Default (Doc. 34) is still pending in this Court. "Given the severity of the sanctions for civil contempt, it is extremely important that a party to be held in civil contempt has notice of the court's orders and of the contempt proceedings." *Atrium Payroll Servs., LLC v. PA Event & Broad. Serv.*, 2023 WL 8870508, at *2 (C.D. Cal. May 11, 2023). The severity of civil contempt sanctions, courts' general disfavor toward default judgments, courts' disfavor for *ex parte* applications, the fact that there is some recent evidence that Defendant may attempt to appear in this matter (Doc. 35-1 at 4), and the fact that this Court has already agreed to a modification of the PI order to restrain Defendant's financial assets all incline this Court to reserve judgment on Plaintiffs' request for a civil contempt hearing.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Notice of *Ex Parte* Motion for Modification of the Preliminary Injunction (Doc. 40) is **granted in part and denied in part** as follows:

1. This Court's Preliminary Injunction (Doc. 22) shall be modified to include a temporary restraint over Defendants' assets related to any infringing domains. Specifically, the third-party payment service providers CashApp and Stripe shall freeze all funds associated with Defendant Anthony Wicklace's accounts and enjoin the transfer of any funds held in such accounts until further ordered by this Court.

2. This Court's Preliminary Injunction (Doc. 22) shall also be modified to add the following language to clarify that "launcherleaks.net" is one of the "third-party websites associated" with the domain name <launcherleaks.com> (Doc. 14 at 9):

    a. Defendant, as well as its officers, agents, servants, employees, and attorneys shall, immediately upon notice of this Order:

   i. deactivate and prevent the transfer of the domain name <launcherleaks.net>;
   ii. deactivate and permanently delete any website(s) at that domain name;
   iii. delete all copies of the copyrighted work registered with the United States Copyright Office by QFCS, with a registration number TX0009042080 (the "Work" or the "QuantV software"), which have been uploaded to any third-party websites associated with the domain name <launcherleaks.net>; and
   iv. cease providing all services for the maintenance and support of the websites at the <launcherleaks.net> domain name.

3. Within **14 (fourteen) days** of this Order, Plaintiffs shall serve notice to CashApp and Stripe of this Order pursuant to Federal Rule of Civil Procedure 5, and Plaintiffs shall certify to this Court that they have effectuated such notice.

4. Within **14 (fourteen) days** of this Order, Plaintiffs shall serve Defendant Anthony Wicklace with this Order per the service methods provided for in the TRO (Doc. 14) and by sending an email to admin@launcherleaks.net, and Plaintiffs shall certify to this Court that they have effectuated such notice.

5. Plaintiffs' requests for this Court to release the $20,000 TRO bond and to set a date for a civil contempt hearing are **denied without prejudice**, as the Court reserves judgment on both issues at this time.

6. This Order shall be **unsealed** by the Clerk of the Court on **December 13, 2024**, unless Defendant files a motion to seal before that date.

Dated this 26th day of November, 2024.

Honorable Steven P. Logan
United States District Judge

cc: David D. Lin